UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES CHRISTOPHER PERKINS,<br><br>    Plaintiff,<br><br>v.<br><br>SENTRY EQUIPMENT ERECTORS, INC.,<br><br>    Defendant. | Case No. 4:15-cv-02971-KAW<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 77 |

On August 14, 2015, Plaintiff Charles Christopher Perkins filed this products liability action against Defendant Sentry Equipment Erectors, Inc. in state court. Thereafter, the case was removed to federal court and consolidated with the *Lagunitas Brewing Company v. Sentry Equipment Erectors, Inc.* action, which has since settled. Before the Court is Defendant's motion for partial summary judgment against Mr. Perkins on the failure to warn claim.

On July 6, 2017, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court DENIES Defendant's Motion for Partial Summary Judgment.

## I. BACKGROUND

Sentry designs and manufactures machinery for use in the beverage bottling industry. In the Spring and Summer of 2013, Lagunitas, a large-scale beer brewer and bottler, custom-designed and purchased a Sentry bulk depalletizer ("depal") machine to incorporate into its existing beer bottling line. The depal removes ("sweeps") layers of bottles, which are stacked on a wooden pallet, one layer at a time, thereby feeding empty bottles into the bottling line. (*See* Decl. of Craig A. Livingston, "Livingston Decl.," Dkt. No. 77-2 ¶ 2; Def.'s Dep. of Charles Christopher Perkins, "Def.'s Perkins Dep.," Livingston Decl., Ex. A at 147:11-151:12.)

### A. Plaintiff's Employment at Lagunitas and his injury

Lagunitas hired Perkins in December 2011 as a "maintenance team lead" for the packaging (bottling and kegging) line in its Petaluma plant. (Def.'s Perkins Dep. 31:18-32:1.) On August 19, 2013, Perkins' supervisor, Ryder Morrison, asked him to work on the depal to determine the cause of a recurring "fault code" problem believed to involve a photo eye sensor and reflector in the empty pallet discharge area. (Def.'s Perkins Dep. 123:17-125:13). Perkins suspected he might need to replace the reflector, so he took a new one with him from his office to the depal. (Def.'s Perkins Dep. 165:22-168:7.)

When Perkins arrived at the depal, he was aware that it was in operation because he could see and hear the machine sweeping layers of empty glass bottles from a loaded pallet in the hoist. (Def.'s Perkins Dep. 133:17-134:9.) Perkins thought the fault code problem could have been attributable to a light emitting photo eye sensor and/or a damaged or out-of-adjustment photo eye reflector. (Def.'s Perkins Dep. 133:17-134:13.) First, Perkins checked to see if the machine registered power to the photo eye, which is indicated by the illumination of two small indicator lights (one green, one yellow). (Pl.'s Perkins Dep., Krankemann Decl., Ex. 16 at 143:9-144:7.) The green light indicates that the machine is on, and the yellow light means that the circuit is complete, which means that the laser is hitting the reflector and being sent back to the sensor. *Id.* Perkins confirmed that the indicator lights were both on. *Id.*

Next, since the lights were on, Perkins attempted to visually determine whether the photo eye was actually functioning, as opposed to the indicator light being on without function. (Pl.'s Perkins Dep., Krankemann Decl., Ex. 17 at 145:14-147:3.) To do so, Perkins leaned over at the waist and placed his entire upper body in the pallet discharge area, placing his left hand on the concrete floor, and his right hand on the pallet stop bar component for balance, in an attempt to look down and back toward his right to see the reflector attached to the inside of the machine. (Def.'s Perkins Dep. 145:14-148:25.) Both of Perkins' feet were in contact with the concrete floor outboard of the depal, and his upper body and arms were inside the depal. *Id.*

Perkins knew the pallet stop bar would rise periodically during the normal operation of the machine to allow an empty pallet to be discharged from the rear side of the hoist. (Def.'s Perkins

Dep. 86:5-88:10.) While Perkins attempted to look at the reflector, the pallet stop bar rose and "grabbed" his right hand resulting in significant crush injuries to his wrist. (Def.'s Perkins Dep. 151:2-23.) Perkins admitted that he did not use LOTO procedures prior to positioning himself into the operating machine. (Def.'s Perkins Dep. 173:7-10.)

### B. Plaintiff's prior experience

As of the date of his accident, Perkins had 19 years of experience as a maintenance and repair technician between his employment at Lagunitas and prior jobs. (Def.'s Perkins Dep. 20:9-23:24, 24:17-25:25.) Perkins understood LOTO was a safety practice intended to ensure a machine has been locked out from all energy sources to avoid sustaining an injury while performing work. (Def.'s Perkins Dep. 41:10-42:2.) Not only had Perkins been trained in LOTO procedures in prior jobs, in a prior position it was his job to train other on safety matters, including LOTO. (Def.'s Perkins Dep. 42:7-43:25.) Perkins personally taught between 625 and 1,200 employees LOTO procedures during 25 to 30 training seminars provided over a six-year period. (*See* Def.'s Perkins Dep. 44:1-8.) These LOTO safety courses involved instructional videos, class work, question and answer sessions, and physical demonstrations of how to use proper LOTO procedures on actual machines. (Def.'s Perkins Dep. 44:16-46:7.)

Perkins also received LOTO training once employed at Lagunitas. (Def.'s Perkins Dep. 46:17-20.) For example, on February 15, 2011, Perkins attended a safety training class – taught by supervisor Ryder Morrison – covering LOTO procedures, during which Perkins received a LOTO training handout which covered LOTO procedures in detail. (Def.'s Perkins Dep. 46:17-51:18, 52:25-53:7.) Separate and apart from his extensive LOTO training, Perkins had, on many occasions, personally utilized LOTO procedures while performing service and repair work on machines. (Def.'s Perkins Dep. 42:7-43:2.) The LOTO training Perkins taught others at Kinetic Systems and the LOTO training he received pre-accident at Lagunitas both covered the same important LOTO procedures: 1) Prepare for the shutdown; 2) Shutdown; 3) Isolate energy sources; 4) Apply locks & tags; 5) Control residual energy; and 6) Verify energy control methods. (Def.'s Perkins Dep. 50:3-51:18, 52:25-58:23.)

While at Lagunitas and prior to his accident, Perkins attended a separate "Job Hazard

3

Analysis" training class on September 24, 2012, and he was specifically instructed to follow all LOTO procedures whenever performing maintenance, unjamming or other service work on any machine. (Def.'s Perkins Decl. 61:8-65:15.) Perkins attended this training class and received the training handout from this course which, among other things, instructed him to:

(1) "Ensure that lockout procedures are followed";

(2) "Read all safety owner manual instructions and follow them";

(3) "Never, never, never reach into the point of operation of any machine unless it is locked out and blocked where energy exists."

(4) "Follow lockout procedure for all maintenance, unjamming or service work including tool changes";

(5) Verify the lock-out to ensure it is complete before working on the equipment."

(*Id.*; Def.'s Dep. of Ryder Morrison, "Def.'s Morrison Dep.," Livingston Decl., Ex. E at 57:18-64:23; Def.'s Morrison Dep., Ex. 9, Livingston Decl., Ex. F.) Perkins admitted he was already very familiar with these points before attending this training course less than a year before his incident. (Def.'s Perkins Decl. 61:8-65:15.)

### C. Sentry's LOTO Warnings in its Depal Manual

Sentry's depal was delivered to Lagunitas with an operation manual which included a section entitled "Warnings and Notices." (Def.'s Perkins Dep. 77:6-12.) Perkins spent several hours reviewing this manual to become familiar with this particular depal and to better understand how it operated. (Def.'s Perkins Dep. 78:10-19, 80:11-12; Def.'s Morrison Dep., Ex. 15, Livingston Decl., Ex. G.) During this review, Perkins confirmed that the manual contained the following warning:

**CAUTION!**
**PERSONAL INJURY MAY RESULT IF THE FOLLOWING PRECAUTIONS ARE NOT OBSERVED.**
"Be sure electrical power is off and compressed air is off and bled from the machine before performing maintenance or service."

(Def.'s Perkins Dep. 77:6-12; Def.'s Morrison Dep., Ex. 15, Livingston Decl., Ex. G.) Perkins acknowledged it was a standard LOTO admonition. (Def.'s Perkins Dep. 79:24-80:10.)

Sentry's operation manual also includes a "Trouble Shooting" section. (Trouble Shooting

4

Section, Krankemann Decl., Ex. 23.) The depal has two types of photo eyes: diffused sensors and reflex sensors. *Id.* at 4. The manual provides that troubleshooting for reflex sensors "consists of cleaning the eye reflector." *Id.* The "Photo Eyes" troubleshooting subsection does not refer to LOTO. *Id.* Mr. Hazlehurst testified that he was never advised that the proper method to troubleshoot the photo eye was to LOTO the depalletizer and provide power to the photo eye from another power source. (Pl.'s Dep. of John Hazlehurst, "Pl.'s Hazlehurst Dep.," Krankemann Decl., Ex. 24 at 131:16-132:4.) Notwithstanding, Mr. Hazlehurst testified that he had seen electricians use a "power box" to provide an independent power source to the photo eyes on similar depalletizers to service them, which allowed them to "quickly plug into [the depalletizer] and align photo eyes with it." (Pl.'s Hazlehurst Dep., Krankemann Decl., Ex. 25 at 132:6-15.) Furthermore, Mr. Weeks testified that a power source is required to troubleshoot the photo eye and reflector. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 20 at 141:18-24.)

### D. Sentry's Depal Risk Assessment

On or about August 3, 2013, Sentry conducted a risk assessment of a depal that it was about to sell. (*See* Pl.'s Dep. of Douglas James Weeks, "Pl.'s Weeks Dep.," Decl. of W. Christian Krankemann, "Krankemann Decl.," Dkt. No. 80-1 ¶ 3, Ex. 3 at 149:19-24.) The meeting was initiated by John Hazlehurst, who had been recently promoted to manager of machinery. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 4 at 150:4-151:13.) According to Sentry's corporate witness, Mr. Weeks, Mr. Hazlehurst initiated the meeting because it was not known whether a risk assessment had ever been performed on the depalletizers. *Id.*

The risk assessment identified key risks in the "hoist discharge area" of the depal, which is the same area in which Perkins was injured. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 5 at 156:10-163:22, Ex. 6 at 163:20-22.) The assessment indicated that personnel could access the area, and that the risk of hand injury could be remedied by designing and installing guarding to prevent access. (*See* Pl.'s Weeks Dep., Krankemann Decl., Ex. 7 at 164:16-25.)

Despite the risk assessment meeting and the determination that the "hoist discharge area" needed to be guarded, no steps were taken to warn Sentry depal customers of the impending danger. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 8 at 186:6-15.)

**E. Procedural Background**

On August 14, 2015, Plaintiff filed this products liability action in state court. Thereafter, the case was removed to federal court and consolidated with the *Lagunitas Brewing Company v. Sentry Equipment Erectors, Inc.* action, which has since settled.

On May 24, 2017, Defendant filed the motion for partial summary judgment. (Def.'s Mot., Dkt. No. 77-1.) On June 7, 2017, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 80.) On June 14, 2017, Defendant filed a reply and objections to Plaintiff's evidence in opposition to the motion for summary judgment. (Def.'s Reply, Dkt. No. 85; Def.'s Obj., Dkt. No. 85-1.)

## II. LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id*.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Motion for Partial Summary Judgment

Defendant moves for partial summary judgment on the failure to warn claims on three, separate grounds: 1) Plaintiff was a sophisticated user under California law, and he either knew or should have known of the risk of injury in attempting to perform maintenance/repair work on the subject depalletizer without first stopping the machine and using "Lock Out/Tag Out" ("LOTO")-type procedures; 2) Sentry provided adequate instructions not to attempt service on the subject depalletizer without first stopping the machine and using LOTO-type procedures; and 3) regardless, the allegedly inadequate warning did not cause Plaintiff's accident. (Def.'s Mot. at 1-2.)

The Court will address each argument below.

##### i. Whether Plaintiff was a Sophisticated User

Generally, "the adequacy of a warning is a question of fact for the jury." *Jackson v. Deft,*

7

*Inc.*, 223 Cal. App. 3d 1305, 1320 (Ct. App. 1990). Defendant, however, contends that Plaintiff is a sophisticated user, and, therefore, Sentry had no duty to warn him not to attempt service or repair of a machine that was in operation. (Def.'s Mot. at 10.) The sophisticated user knows, or should know, about a product's dangers, such that "the manufacturer's failure to warn is not the legal cause of any harm." *Webb v. Special Elec. Co.*, 63 Cal. 4th 167, 182 (2016). Essentially, "[a] sophisticated user's knowledge is [] the equivalent of prior notice." *Id.* The sophisticated user defense does not require actual knowledge of potential hazards, but, rather, only if the user knew or should have known of the product's risk in light of his training or skill. *Id.* (citing *Johnson v. Am. Standard, Inc.*, 43 Cal. 4th 56, 71 (2008)). Since "the sophisticated user's knowledge is essentially a substitute for a warning from the supplier of the product, in order for the defense to apply, the scope of knowledge of the sophisticated user must parallel the scope of the warning that would otherwise be required." *Buckner v. Milwaukee Elec. Tool Corp.*, 222 Cal. App. 4th 522, 535 (2013).

In opposition, Plaintiff argues that the sophisticated user defense is inapplicable, because LOTO could not have been used to avoid injury. (Pl.'s Opp'n at 6-7.) This argument is well taken. As an initial matter, at the hearing, Defendant conceded that LOTO generally requires being locked out from all energy sources. Sentry's corporate witness testified that the depal requires a power source in order to permit troubleshooting of the photo eye. (*See, e.g.,* Pl.'s Weeks Dep., Krankemann Decl., Ex. 20 at 141:18-24.) Furthermore, Mr. Hazlehurst, Sentry's own mechanical engineer, testified that he was never advised that the proper method to troubleshoot the photo eye was to LOTO the depal and provide power to the photo eye from an independent power source. (*See* Pl.'s Hazlehurst Dep., Krankemann Decl., Ex. 24 at 131:16-132:4.) The fact that one of Sentry's own engineers did not know how to properly troubleshoot the photo eye, means that sophistication in LOTO, generally, is not sufficient to make Perkins a sophisticated user of the depalletizer at issue. This is particularly true when Sentry possessed actual knowledge of the mitigation technique required to troubleshoot the depal—an independent power source to power the photo eye— but did not provide the information to Lagunitas or Perkins. (*See* Pl.'s Opp'n at 10.)

Notwithstanding, Plaintiff argues that Defendant is unable to satisfy the elements of the sophisticated user defense that Plaintiff knew the degree of danger involved and that he knew how to mitigate or avoid the risk. (Pl.'s Opp'n at 7.) Under *Buckner,* "a manufacturer must demonstrate that sophisticated users of the product know what the risks are, including the degree of danger involved (i.e., the severity of the potential injury), and how to use the product to reduce or avoid the risks, to the extent that information is known to the manufacturer." 222 Cal. App. 4th at 536. Here, at the very least, there exists a genuine dispute of material fact that Plaintiff knew how to reduce or avoid the risk of injury by the mitigation technique of using LOTO plus the alternate power source, which appears to have been known to Sentry prior to the accident.

Thus, viewing the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in his favor, the Court finds that the sophisticated user defense does not apply, because LOTO procedures alone would not have permitted troubleshooting of the photo eye.

### ii. Whether the Warning was Adequate

Alternatively, Defendant argues that the warnings provided were adequate. (Def.'s Mot. at 12.) It is undisputed that Sentry provided an operations manual for the subject depal machine, which included a section entitled "Warnings and Notices." (Def.'s Perkins Dep. 77:6-12.) Perkins testified that he spent several hours reviewing this manual, and confirmed that the manual contained the following warning:

> **CAUTION!**
> PERSONAL INJURY MAY RESULT IF THE FOLLOWING PRECAUTIONS ARE NOT OBSERVED.
> "Be sure electrical power is off and compressed air is off and bled from the machine before performing maintenance or service."

(Def.'s Mot. at 12; Def.'s Perkins Dep. 77:6-12, 78:10-19, 80:11-12; Def.'s Morrison Dep., Ex. 15, Livingston Decl., Ex. G.) Defendant argues that since the warning said to turn off the power before performing maintenance or service, that, had Perkins followed the warning, the accident would not have occurred. (Def.'s Mot. at 13.)

In opposition, Plaintiff argues that there is a difference between performing maintenance and troubleshooting. (Pl.'s Opp'n at 11.) In fact, the "Trouble Shooting" section of the operations

1 manual is silent as to using LOTO when troubleshooting the photo eye. (Photo Eye subsection, Krankemann Decl., Ex. 23 at 4.) Moreover, Mr. Weeks testified that LOTO is not always necessary when troubleshooting the photo eye. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 29 at 93:21-94:9.) Weeks further testified that Sentry does not have a recommendation in the manual or any other document for when LOTO becomes necessary when troubleshooting the photo eye and reflector in question. (Pl.'s Weeks Dep., Krankemann Decl., Ex. 30 at 94:18-95:10.)

Therefore, in viewing the evidence in the light most favorable to Plaintiff, the Court finds that troubleshooting and maintenance are not synonymous, because there was not a LOTO warning pertaining to troubleshooting the photo eye. Additionally, as discussed above, LOTO procedures would not have permitted troubleshooting of the photo eye, because an independent power source was required. *See* discussion, *supra,* Part III.A.i. Accordingly, Defendant's motion is denied.

### iii. Whether the Allegedly Inadequate Warning Caused Plaintiff's Accident

Lastly, Defendant argues that the allegedly inadequate warning did not cause Plaintiff's accident. (Def.'s Mot. at 13.) Specifically, Defendant contends that Perkins cannot prove that Sentry's omission was a substantial factor in causing his injury. *Id.*

In opposition, Plaintiff argues that Sentry's argument that Perkins would not have followed safety instructions if they had been provided to him is pure speculation. (Pl.'s Opp'n at 12.) The Court agrees. Indeed, Sentry's argument requires a credibility determination, which is only properly made by the finder of fact.

Accordingly, Defendant's motion for summary judgment is denied.

### IV. CONCLUSION

In light of the foregoing, Defendant Sentry Equipment Erectors, Inc.'s motion for partial summary judgment is DENIED.

IT IS SO ORDERED.

Dated: July 6, 2017

KANDIS A. WESTMORE
United States Magistrate Judge

10